IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MAURICE PERRY FLEMING, | § § | |
| *Plaintiff,* | § § § | SA-19-CV-00701-ESC |
| vs. | § § | |
| ANDREW M. SAUL, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION; | § § § § § | |
| *Defendant.* | § § | |

## **ORDER**

This order concerns Plaintiff's request for review of the administrative denial of his application for a period of disability and disability insurance benefits ("DIB") under Title II. 42 U.S.C. §§ 405(g), 1383(c)(3). After considering Plaintiff's Original Brief [#13], Defendant's Brief in Support of the Commissioner's Decision [#14], the transcript ("Tr.") of the SSA proceedings [#9], the other pleadings on file, the applicable case authority and relevant statutory and regulatory provisions, and the entire record in this matter, the Court concludes that substantial evidence supports the Commissioner's decision finding Plaintiff not disabled and that no reversible legal error was committed during the proceedings. The Court will therefore affirm the Commissioner's decision finding Plaintiff not disabled.

## **I.  Jurisdiction**

This Court has jurisdiction to review a decision of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The undersigned has authority to enter this Order pursuant to 28 U.S.C. § 636(c)(1), as all parties have consented to the jurisdiction of a United States Magistrate Judge [#8, #10].

1

## II.  Factual Background

Plaintiff Maurice Perry Fleming filed his application for DIB on September 20, 2017, alleging disability since October 9, 2015.[1]  (Tr. [#9] 199.)  At the time of his DIB application, Plaintiff was a 44-year-old military veteran with a Bachelor of Science degree in culinary sciences.  (Tr. 39, 61–62, 199, 232.)  Plaintiff has past relevant work as a cook and food service specialist for the U.S. Army from September 1993 to January 2013 with deployment to Iraq and Korea.  (Tr. 58, 232, 383.)  The related medical conditions upon which Plaintiff based his initial DIB application were osteoarthritis of both knees, plantar fasciitis and arthritis of both feet, back problems, sleep apnea, high blood pressure, high cholesterol, post-traumatic stress disorder, depression, anxiety, and memory loss.  (Tr. 231.)  Plaintiff's application for DIB was denied initially on December 18, 2017 and again upon reconsideration on June 4, 2018.  (Tr. 87, 106.)

Following the denial of his claim, Plaintiff requested an administrative hearing.  Plaintiff and his attorney Jamie Daily attended the administrative hearing before Administrative Law Judge ("ALJ") Ben Barnett on November 26, 2018.  (Tr. 29–72.)  Plaintiff and vocational expert ("VE") Jennifer Stone provided testimony at the hearing.  (*Id.*)

The ALJ issued an unfavorable decision on December 3, 2018.  (Tr. 15–24.)  The ALJ found that Plaintiff met the insured-status requirements of the SSA and applied the five-step sequential analysis required by SSA regulations.  At step one of the analysis, the ALJ found that Plaintiff has not engaged in substantial gainful activity since November 8, 2017, the alleged

---

[1] Due to the fact that there was a previous application for DIB and a prior ALJ determination from 2015, Plaintiff orally amended the alleged date of disability to November 8, 2017 at the ALJ's hearing.  (Tr. 35–36.)

disability onset date, through December 31, 2017, his date of last insured.[2]  (Tr. 17.)  At step two, the ALJ found Plaintiff to have the following severe impairments: obesity, lumbar spondylosis and degenerative disc disease, osteoarthritis of the knees, post-traumatic stress disorder, generalized anxiety disorder, major depressive disorder, status post-right-foot-hardware placement with a fractured screw, obstructive sleep apnea, bilateral plantar fasciitis/pes planus, and hypertension.  (Tr. 17.)  At step three, the ALJ found that these impairments did not meet or medically equal the severity of one of the listed impairments in the applicable Social Security regulations so as to render Plaintiff presumptively disabled.  (Tr. 17–19.)

Before reaching step four of the analysis, the ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work with the following restrictions: lifting/carrying 10 pounds occasionally; lifting/carrying less than 10 pounds frequently; standing/walking two hours in an eight-hour workday; sitting six hours in an eight-hour workday; occasionally climbing ramps/stairs, balancing, stooping, kneeling, crouching, and crawling; never climbing ladders/ropes/scaffolds or operating right foot controls.  (Tr. 19–22.)  Plaintiff was also limited to simple, routine, and repetitive tasks and only superficial interaction with the public and coworkers.  (*Id.*)  At step four, the ALJ determined that Plaintiff was not capable of performing his past relevant work as a cook and food service worker.  (Tr. 22.)

Then, considering Plaintiff's age, educational factors, work experience, and RFC, as well as the testimony of the VE, the ALJ found Plaintiff was capable of performing a number of jobs that exist in significant numbers in the national economy, such as production worker/final assembler, addresser, and document preparer.  (Tr. 23.)  Accordingly, the ALJ determined that

---

[2] This brief period of less than two months is the relevant period for determining whether Plaintiff was disabled for purposes of collecting DIB under Title II.  To be entitled to DIB, Plaintiff must establish disability on or before December 31, 2017, his last day of coverage.  *See* 42 U.S.C. § 423(a)(1).

3

Plaintiff was not disabled for purposes of the Act, and therefore not entitled to receive DIB.  (Tr. 24.)

Plaintiff requested review of the ALJ's decision, but his request for review was denied by the Appeals Council on April 23, 2019.  (Tr. 1–6.)   On June 17, 2019, Plaintiff filed the instant case, seeking review of the administrative determination.

### III.  Governing Legal Standards

**A.     Standard of Review**

In reviewing the denial of benefits, the Court is limited to a determination of whether the Commissioner, through the ALJ's decision,[3] applied the proper legal standards and whether the Commissioner's decision is supported by substantial evidence.  *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).  "Substantial evidence is more than a scintilla, less than preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Villa v. Sullivan*, 895 F.2d 1019, 1021–22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).  Four elements of proof are weighed by the Court in determining if substantial evidence supports the Commissioner's determination: (1) the objective medical facts; (2) the diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work experience.  *Martinez*, 64 F.3d at 174.  "'[N]o substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"  *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).  The Court may not reweigh the evidence or substitute its judgment for

---

[3] In this case, because the Appeals Council declined to review the ALJ's decision, the decision of the ALJ constitutes the final decision of the Commissioner, and the ALJ's factual findings and legal conclusions are imputed to the Commissioner.  *See Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005); *Harris v. Apfel*, 209 F.3d 413, 414 (5th Cir. 2000).

that of the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Conflicts in the evidence and credibility assessments are for the Commissioner, not the Court, to resolve. *Id.*

While substantial deference is afforded the Commissioner's factual findings, the Commissioner's legal conclusions, and claims of procedural error, are reviewed *de novo*. *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Carr v. Apfel*, 133 F. Supp. 2d 476, 479 (N.D. Tex. 2001).

### B. Entitlement to Benefits

The term "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled only if his physical or mental impairment or impairments are so severe that he is unable to do his previous work, and cannot, considering his age, education, and work experience, participate in any other kind of substantial gainful work that exists in significant amount in the national economy—regardless of whether such work exists in the area in which he lives, whether a specific job vacancy exists, or whether he would be hired if he applied for work. 42 U.S.C. §§ 423(a)(1), 1382c(a)(3)(B).

### C. Evaluation Process and Burden of Proof

As noted above, SSA regulations require that disability claims be evaluated according to a five-step process. *See* 20 C.F.R. §§ 404.1520, 416.920 (2016). In the first step, the ALJ determines whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" means "the performance of work activity involving significant physical or mental abilities for pay or profit." *Newton*, 209 F.3d at 452–53 (citing 20 C.F.R. § 404.1572(a)–(b)). An individual who is working and engaging in substantial

gainful activity will not be found disabled regardless of his medical condition, age, education, or work experience.  20 C.F.R. § 404.1520(b).

Then, at the second step, the ALJ determines whether the claimant has a medically determinable physical or mental impairment that is severe or a combination of impairments that is severe.  20 C.F.R. § 404.1520(a)(4)(ii); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).  "An impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."  *Stone*, 752 F.2d at 1101 (internal quotation omitted).  An individual who does not have a "severe impairment" will not be found to be disabled.  20 C.F.R. § 404.1520(c).

Under the third step, an individual who has an impairment that meets or is medically equal to the criteria of a listed impairment in Appendix 1 ("the Listings") of the regulations will be considered disabled without the consideration of other vocational factors.  20 C.F.R. § 404.1520(d).  If the claimant does not qualify under the Listings, the evaluation continues to the fourth step.  Before commencing the fourth step, however, the ALJ assesses the claimant's residual functional capacity ("RFC"), which is a "multidimensional description of the work-related abilities" a claimant retains despite medical impairments.  20 C.F.R. § Pt. 404, Subpt. P, App. 1.  *See also* 20 C.F.R. § 404.1520(e); *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005).

At the fourth step, the ALJ reviews the RFC assessment and the demands of his past relevant work.  20 C.F.R. § 404.1520(f).  If an individual is capable of performing the work he has done in the past, a finding of "not disabled" will be made.  *Id.*  If an individual's impairment precludes him from performing his past relevant work, the fifth and final step evaluates the

claimant's ability—given the claimant's residual capacities, age, education, and work experience—to do other work.  20 C.F.R. § 404.1520(g).  If a claimant's impairment precludes him from performing any other type of work, he will be found to be disabled.  *Id.*

The claimant bears the burden of proof at the first four steps of the evaluation process.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  Once the claimant satisfies his burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236.  This burden may be satisfied either by reference to the Medical–Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence.  *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).  If the Commissioner adequately points to potential alternative employment, the burden shifts back to the claimant to prove that he is unable to perform that work.  *Anderson v. Sullivan*, 887 F.2d 630, 632–33 (5th Cir. 1989).  A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## IV.  Analysis

Plaintiff raises one point of error in this appeal:  that the ALJ exceeded his authority in determining Plaintiff's RFC by rejecting every physician's opinion regarding the extent of Plaintiff's limitations and reaching an independent conclusion that Plaintiff was capable of a range of sedentary work.  In other words, Plaintiff argues that substantial evidence does not support the ALJ's RFC determination because there is no medical opinion in the record consistent with the ALJ's findings.  According to Plaintiff, the ALJ's analysis therefore violated the principles set forth in *Ripley v. Chater*, 67 F.3d 552, 557–58 (5th Cir. 1995), which prohibits an ALJ from deriving a claimant's RFC based solely on the ALJ's subjective interpretation of

the raw medical data without seeking or relying on opinions from medical experts. The Commissioner responds that the ALJ properly interpreted the medical opinions of record in accordance with a new Social Security regulation, 20 C.F.R. § 404.1520c, governing claims filed on or after March 27, 2017. For the reasons set forth below, the Court finds that the ALJ did not commit reversible error during the administrative proceedings, and that his RFC determination is supported by substantial evidence.

**A.      It is an ALJ's job to determine a claimant's RFC, but when he does so, the ALJ may not substitute his lay opinion for uncontroverted medical opinions.**

An RFC determination is the most an individual can still do despite his limitations. 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, the ALJ must consider all the evidence in the record, including the limiting effects of all documented impairments, regardless of whether those impairments are severe or non-severe. *Id.* at § 404.1545(a)(1)–(3). The relative weight to be given the evidence contained in the record is within the ALJ's discretion. *Chambliss v. Massanari*, 269 F.3d 520, 523 & n.1 (5th Cir. 2001) (per curiam). To that end, the ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (per curiam). Furthermore, "RFC determinations are inherently intertwined with matters of credibility, and the ALJ's credibility determinations are generally entitled to great deference." *Acosta v. Astrue*, 865 F. Supp. 2d 767, 790 (W.D. Tex. 2012) (citing *Newton*, 209 F.3d at 459 (internal quotation omitted)).

That said, the Fifth Circuit has made clear that an ALJ "may not—without opinions from medical experts—derive the applicant's residual functional capacity based solely on the evidence of his or her claimed medical conditions." *Williams v. Astrue*, 355 Fed. App'x 828, 832 n.6 (5th Cir. 2009) (citing *Ripley v. Chater*, 67 F.3d 552, 557–58 (5th Cir. 1995)). Numerous district courts have relied on this principle in vacating RFC determinations that are not supported by an

actual medical opinion and instead are based on the ALJ's subjective interpretation of the medical data in the record. *See, e.g.*, *Raper v. Colvin*, 262 F. Supp. 3d 415, 422–23 (N.D. Tex. 2017) (finding the ALJ's RFC determination to be unsupported by substantial evidence under *Ripley*); *Fitzpatrick v. Colvin*, No. 3:15-CV-3202-D, 2016 WL 1258477, at *8 (N.D. Tex. Mar. 31, 2016) ("[T]he ALJ improperly made an independent RFC finding after declining to rely on any of the medical opinions addressing the effects of Fitzpatrick's mental impairments on his ability to work."); *Thornhill v. Colvin*, No. 3:14-CV-335-M (BN), 2015 WL 232844, at *10 (N.D. Tex. Jan. 16, 2015) ("While the ALJ may choose to reject medical sources' opinions, he cannot then independently decide the effects of Plaintiff's mental impairments on her ability to perform work-related activities, as that is prohibited by *Ripley* . . . ."). This is because an ALJ may not substitute his or her lay opinion for the uncontroverted medical opinions of the only physicians of record on the effects of the claimant's impairments. *Garcia v. Berryhill*, No. EP-17-CV-00263-ATB, 2018 WL 1513688, at *2 (W.D. Tex. Mar. 27, 2018). Where "the ALJ rejects the only medical opinions of record, interprets the raw medical data, and imposes a different RFC, the ALJ has committed reversible error." *Id.*; *see also Beachum v. Berryhill*, No. 1:17-cv-00095-AWA, 2018 WL 4560214, at *4 (W.D. Tex. Sept. 21, 2018) (citing *Garcia*, 2018 WL 1513688, at *2).

**B.      ALJs are no longer required to give controlling weight to certain medical opinions.**

The Social Security Administration recently promulgated a new rule regarding RFC determinations to govern all claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c. Because Plaintiff filed his claim on September 20, 2017, the new rule applies. This rule addresses how the Commissioner is to consider and articulate medical opinions and prior administrative medical filings in evaluating a claimant's residual functional capacity and

eliminated the longstanding "treating-physician rule," which required the ALJ to give a treating physician's opinion "controlling weight" in the absence of certain other specific findings. *See* 20 C.F.R. § 404.1527(c)(2).

The new rule states that the Commissioner is no longer required to defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding. *Id.* at § 404.1520c(a). Instead, the Commissioner is to consider all medical opinions and prior administrative medical findings using the same specific factors outlined in the rule, the most important of which are "supportability" and "consistency." *Id.* The other factors are relationship with the claimant, specialization, and other factors, such as familiarity with other evidence in the claim. *Id.* at § 404.1520c(c). The Commissioner must articulate how persuasive he finds each of the opinions in the record. *Id.* at § 404.1520c(b).

**C.     Here, the ALJ considered each medical opinion and explained how he determined its persuasiveness, and his RFC determination is supported by substantial evidence.**

In determining Plaintiff's RFC, the ALJ applied the new Section 404.1520c and discussed each of the medical opinions in the record and explained that he is no longer required to "defer or give any specific evidentiary weight, including controlling weight," to any prior administrative finding or medical opinion under the new rule. (Tr. 22.) For each opinion, the ALJ explained whether he found the opinion to be supported by the claimant's treatment notes or the objective examination findings, as applicable, and he also explained whether he ultimately found the opinion to be persuasive. (Tr. 22.) As pointed out by Plaintiff, the ALJ took issue with certain aspects of each of the medical opinion and did not find any of the medical opinions of record to be persuasive in its entirety. (Tr. 21–22.) But nevertheless, the ALJ's RFC determination is supported by the record.

Plaintiff's primary complaints underlying his application for DIB are pain associated with chronic issues with his right foot and back problems. (Tr. 36–39.) The record demonstrates that Plaintiff suffered an injury to his right ankle in 2012, which required internal fixation surgery. (Tr. 383–84.) X-rays of his right foot in 2013 showed a fractured screw on the internal hardware and soft tissue swelling, which has caused ongoing problems with right extremity and lumbar spine. (Tr. 349.) Due to ongoing issues with this extremity, Plaintiff sometimes wears a custom brace and often walks with a cane. (Tr. 383–84.) Plaintiff also complains of various mental limitations, primarily stemming from psychiatric issues associated with witnessing a friend's severe injury from an IED while in Iraq. (Tr. 503.) Plaintiff suffers from posttraumatic stress disorder and associated depressive and anxiety conditions. (Tr. 503.)

To prevail on his claim for DIB under Title II, Plaintiff must demonstrate that he was disabled during the relevant period, which in this case is November 8, 2017, the alleged disability onset date, through December 31, 2017, the date of last insured. There are no treatment records from this brief time period in the administrative record, only several evaluations for purposes of Plaintiff's disability application. The administrative record contains medical records from outside of this brief time period, however, which are relevant to the ultimate disability determination to the extent they provide information relative to Plaintiff's impairments and limitations at the end of 2017. As previously noted, the ALJ considered each medical opinion in the record, but did not entirely accept any of them. The Court now reviews each of these opinions in turn.

**Dr. Monnig**. Dr. Gayle Monnig, a licensed psychologist, performed a one-time mental status examination of Plaintiff on November 8, 2017. (Tr. 419–23.) Dr. Monnig diagnosed Plaintiff with posttraumatic stress disorder, major depressive disorder, and generalized anxiety

disorder.  (Tr. 422.)  Plaintiff reported to Dr. Monnig that he had been awarded a 100% service-connected disability rating by the Department of Veterans Affairs.  (Tr. 420.)  She observed that Plaintiff presented with a "severely depressed" mood and documented his report of having difficulty completing tasks in a timely manner due to poor concentration, pain, distractibility, and forgetfulness.  (Tr. 421.)  Based on these findings, Dr. Monnig opined that Plaintiff would not be able to sustain employment at any level, due to his difficulties walking and significant psychological and physical symptoms.  (Tr. 423.)  The ALJ found Dr. Monnig's opinion that Plaintiff would not be able to sustain employment at any level to be unsupported by the evaluation findings or the treatment notes, especially in light of the fact that it was based on a single encounter for a mental-health assessment.  (Tr. 21.)

**Dr. Pfeil**.  Dr. Thomas Pfeil saw Plaintiff soon thereafter on November 13, 2017 for an evaluation of his low back, knee, and foot pain.  (Tr. 426.)  Dr. Pfeil's musculoskeletal exam found Plaintiff to have slow ambulation and a right-leg limp, as well as unsteadiness with tandem walking and heel/toe standing.  (Tr. 428.)  Dr. Pfeil found Plaintiff unable to squat or bend all the way over and imposed lifting and carrying restrictions of no more than five to ten pounds and limitations to standing and walking no more than one hour before sitting.  (Tr. 428.)  Dr. Pfeil also noted Plaintiff's low back pain and history of spondylosis and disc disease, tenderness of the lumbar spine, and decreased range of motion.  (Tr. 428.)  Dr. Pfeil described Plaintiff as obese based on his body-mass index.  (Tr. 427.)  A November 2017 x-ray demonstrates that the screws from Plaintiff's device in his right foot remained displaced.  (Tr. 431, 433.)  The ALJ found Dr. Pfeil's finding that Plaintiff could lift no more than five to ten pounds and was unable to kneel, squat, or navigate stairs to be unsupported by the treatment notes or objective examination findings.  (Tr. 22.)

**Physician's Assistant Marcos James**.  Marcos James, a physician's assistant for a podiatrist, opined in July 2018 that Plaintiff needs to elevate his extremities and reduce ambulation and prolonged standing in order to avoid swelling and inflammation and more persistent pain.  (Tr. 603.)  Although James did not examine Plaintiff during the relevant period, he opined that Plaintiff's ankle pain had been present prior to his date of last insured.  (Tr. 603.) James recommended that Plaintiff wear customized orthotics and a right-hinged ankle and foot brace and use a walking cane for assisted ambulation.  (Tr. 604.)  As to James's opinion that Plaintiff required elevation of his extremities, the ALJ also found the opinion not supported by the medical evidence from the relevant period of disability.  (Tr. 22.)

**State Agency Consultants**.  The record also contains the opinions of the State Agency consultants at both the initial and reconsideration levels.  On December 18, 2017, after reviewing Plaintiff's medical records, Dr. George Carrion concluded that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently—physical exertional limitations commensurate with "light work" as defined in the regulations, *see* 20 C.F.R. § 416.967(b)—and could stand and/or walk for a total of only two hours a day and sit for a total of six hours a day.  (Tr. 81.)  As to Plaintiff's mental limitations, Dr. Henry Hanna, Ph.D. found Plaintiff to have moderate limitations in his ability to respond appropriately to changes in the work setting, to perform at a consistent pace, to get along with coworkers, to interact with the general public, to maintain attention and concentration for extended periods of time, and to understand and remember detailed instructions.  (Tr. 83–85.)  Upon reconsideration in May 2018, Dr. Jeffrey Wheeler and Dr. G.R. Ibarra found the same limitations to be supported by Plaintiff's medical records.  (Tr. 99, 101–03.)

The ALJ found the opinions of the State Agency physicians and psychologists that Plaintiff could perform light work to be unsupported by the evidence, finding Plaintiff to be *more* physically and psychologically limited such that he could only perform sedentary work (lifting/carrying no more than 10 pounds occasionally and lifting/carrying less than 10 pounds frequently) with certain additional postural, right foot control, and mental limitations. (Tr. 22.)

Ultimately, the ALJ acknowledged Plaintiff's complaints of severe pain due to problems with his feet, knees, and lumbar spine, but found that the medical records did not demonstrate that Plaintiff's pain was so severe so as to preclude all types of work. (Tr. 20.) The ALJ found Plaintiff retained the RFC to perform sedentary work with the following restrictions: lifting/carrying 10 pounds occasionally; lifting/carrying less than 10 pounds frequently; standing/walking two hours in an eight-hour workday; sitting six hours in an eight-hour workday; occasionally climbing ramps/stairs, balancing, stooping, kneeling, crouching, and crawling; never climbing ladders/ropes/scaffolds or operating right foot controls. (Tr. 19–22.) Plaintiff was also limited to simple, routine, and repetitive tasks and only superficial interaction with the public and coworkers. (*Id.*)

In fashioning this RFC, the ALJ properly considered all of the medical opinion evidence, and the Court agrees with the Commissioner that substantial evidence supports the ALJ's RFC determination in this case. Although the ALJ did not adopt in its entirety any one medical opinion of record in fashioning his RFC, he also did not completely reject every opinion either. Instead, the ALJ properly evaluated all of the medical opinions in the record (none of which arose out of a treatment relationship) in accordance with the Section 404.1520c's more flexible methodology for analyzing opinion evidence and exercised his discretion to resolve conflicts in the evidence and to assess the RFC based on all the relevant evidence in the record. *See Taylor*

*v. Astrue*, 706 F.3d 600, 602–03 (5th Cir. 2012) (rejecting argument that ALJ substituted his opinion for medical providers in contravention of *Ripley* where ALJ properly interpreted medical evidence in discharging his responsibility to determine the claimant's RFC). Moreover, as the Commissioner points out, many of the objective findings in the medical opinions of record provide direct support for the ALJ's RFC determination.

For example, due to Plaintiff's back pain, Dr. Pfeil assessed exertional limitations to Plaintiff lifting and carrying no more than five to 10 pounds—limitations that were in fact adopted by the ALJ in his RFC assessment. (Tr. 428.) Although Dr. Pfeil found Plaintiff to be unable to kneel, squat, or navigate stairs due to his knee pain, the ALJ found he could do these postural activities on only an occasional basis. (Tr. 19, 428.) The ALJ also limited Plaintiff to only two hours of standing or walking in a two-hour workday, which is compatible with Dr. Pfeil's opinion that Plaintiff be permitted to sit to rest after standing or walking for more than one hour due to his right ankle and foot pain. (Tr. 428.) Additionally, many of Dr. Pfeil's findings were normal as to Plaintiff's neck, upper extremities, and overall strength. Upon exam, Plaintiff exhibited full range of motion of his cervical spine, upper extremities, and hips, and full motor strength in his upper and lower extremities and right and left hands. (*Id.*) In summary, Dr. Pfeil's assessment was only slightly more restrictive than the ALJ's RFC and as a whole supports the RFC assessment limiting Plaintiff to sedentary work with certain limitations that recognize his impairments with respect to his back and right foot.

It is important to note, also, that Plaintiff did not seek any medical treatment during the relevant period for any physical issues. Prior to the alleged disability onset date, Plaintiff only sought treatment twice from his primary care physician at the VA Hospital, Eddy del Rio. In December 2016, Plaintiff saw Dr. del Rio for back pain after helping movers deliver his

belongings. (Tr. 393.) Yet he reported that his pain had "resolved" and that he was walking "normally" and admitted that the pain onset had been due to a "'week-end warrior'-type injury." (Tr. 393–94.) No further intervention was needed. (Tr. 394.) Then in February 2017, Plaintiff saw Dr. del Rio for his annual physical. (Tr. 382–92.) He rated his back pain at the time at a 2/10 and did not mention any other complaints. (Tr. 383.) Plaintiff was not wearing his right ankle brace on that day. (Tr. 384.) His extremities were normal on examination, aside from a slight limp, and Plaintiff's neurological and musculoskeletal examinations revealed normal sensation and motor findings. (*Id.*) Although Plaintiff's visual foot exam found right-ankle deformity, flat feet, and some clubbing of toes, the only advice was to continue with the use of the brace and cane as needed and to return in one year for another routine evaluation. (Tr. 385–86.) There are no further treatment records for the following 11 months, up until the date of last insured.

Although there are some records related to back and ankle/foot treatment from 2018, such as the opinion of Mr. James that Plaintiff required frequent elevation of his extremities, these records again are only relevant insofar as they demonstrate disability during the relevant period from early November to late December 2017. Because there is no evidence of any treatment during the relevant period (or the period immediately preceding the relevant period besides that already described), the ALJ did not err in finding this opinion to be unpersuasive.

As to Plaintiff's mental limitations, the ALJ ultimately adopted Dr. Monnig's diagnoses of PTSD and depressive and anxiety disorders, even though he rejected the aspect of her opinion finding Plaintiff to be unable to perform any type of work. (Tr. 422.) There are also no mental health treatment records from the relevant time period, and Plaintiff denied depression or anxiety in his physical exams with Dr. del Rio in February 2016 and February 2017. (Tr. 384, 405.)

During these appointments, Plaintiff exhibited a normal mood and normal affect. (Tr. 384, 406.) And notably, Plaintiff had successfully obtained a Bachelor of Science in culinary sciences from the Art Institute of San Antonio immediately prior to the relevant period. (Tr. 232, 383, 405.) Although Plaintiff pursued some treatment in 2018 for his PTSD symptoms through group therapy, he did not show for his April 30, 2018 meeting, or seek any further mental health treatment. (Tr. 495–96.) Additionally, a provider recommended further evaluation for medication and therapy options in February 2018, but Plaintiff declined to schedule a follow-up appointment. (Tr. 541.) Moreover, this provider's assessment of Plaintiff's symptoms in 2018 found him to have only a mildly depressed mood with normal speech, attention, though process and content, intact memory, and fair judgment. (Tr. 540.) The Court agrees with the Commissioner that this evidence supports the ALJ's RFC assessment that Plaintiff was capable of performing simple, routine, and repetitive tasks with superficial interaction with the public and coworkers during the relevant period of disability.

Finally, with respect to the opinions of the State Agency physicians and psychologists, the ALJ rejected these opinions only in part, finding Plaintiff's limitations to be *more* restrictive than the findings of Dr. Carrion and Dr. Wheeler (in terms of physical limitations) and *more* restrictive than the findings of Dr. Hanna and Ibarra (in terms of mental limitations). That these medical experts found Plaintiff to be capable of a reduced range of light work—with the ability to sit six hours a day and stand or walk two hours in a day—and to have greater mental capabilities is ultimately supportive of the ALJ's RFC determination that Plaintiff can at least perform the requirements of modified sedentary work with significant restrictions based on his mental limitations.

**D.     The cases invoked by Plaintiff are inapposite.**

As evidenced herein, this is not a case in which there are no medical opinions of record, and the ALJ independently analyzed the raw medical data without any guidance from medical professionals.  *Cf. Ripley*, 67 F.3d at 557 (holding that ALJ had duty to develop facts by requesting medical source statement in light of absence of any medical opinions of record on claimant's ability to work).  Nor is this a case in which the ALJ truly rejected all of the medical opinions of record and fashioned a completely distinctive RFC.  *Cf. Williams*, 355 Fed. App'x at 831 (finding reversible error where ALJ discounted opinions of three treating physicians and record contained no evidence supporting ALJ's finding that claimant could stand or walk for six hours in an eight-hour workday).  "[E]xperienced ALJs can draw their own conclusions [as to disability status] based on accurate medical information."  *Barrett v. Berryhill*, 906 F.3d 340, 343 (5th Cir. 2018).  What Plaintiff "characterizes as the ALJ substituting his opinion" in this case "is actually the ALJ properly interpreting the medical evidence to determine his capacity for work."  *Taylor*, 706 F.3d at 603.  Because Plaintiff has failed to identify any reversible error occurred in these proceedings, and substantial evidence supports the ALJ's RFC determination, the Court will affirm the Commissioner's determination that Plaintiff was not disabled during the relevant period for purposes of his claim for DIB.

## V.  Conclusion

Based on the foregoing, the Court finds that no reversible error was committed during these proceedings and substantial evidence supports the Commissioner's finding that Plaintiff was not disabled.  Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision finding that Plaintiff is

not disabled is **AFFIRMED**.

SIGNED this 10th day of August, 2020.

_____
ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE